## Bruce v. Scully.

(Decided January 22, 1915.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. **Malicious Prosecution—Probable Cause—Question for Jury.**—
Whether the facts proven, in attempting to show a probable
cause for the prosecution of another, are sufficient to make a
probable cause is a question of law, exclusively for the court.

2. Malicious Prosecution—Probable Cause—Question for Jury.—If the facts relied upon to show probable cause in a suit of malicious prosecution are disputed, then as to whether or not such facts exist, is a question for the jury under proper instructions.

3. Malicious Prosecution—Probable Cause—Burden of Proof.—In a suit for damages for malicious prosecution, the burden of proof is upon the plaintiff to show want of probable cause as well as malice in the defendant, who is charged with instituting the prosecution, upon which the suit is founded.

4. Malicious Prosecution—Probable Cause—Question for Jury.—If the evidence for plaintiff shows conclusively from undisputed facts that the defendant had probable cause for the institution against plaintiff of the prosecution complained of, there is no question for the jury, and the court should direct a verdict for the defendant.

O. M. ROGERS for appellant.

JOHN B. O'NEAL and BYRNE & READ for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Kate Bruce, filed her petition in the Kenton Circuit Court, in which she alleged that the appellee, Elizabeth Scully, had made an affidavit before a justice of the peace, charging her with the offense of using abusive and insulting language in the presence of other persons with the intent to provoke an assault, and caused her to be arrested upon that charge and tried before the justice of the peace, and a jury, and that the trial resulted in an acquittal, and that said prosecution was set on foot by the appellee with malice against her and without probable cause for so doing, and asked a judgment against the appellee in the sum of $10,000.00. The appellee, by answer, admitted the taking out of the warrant alleged to have been issued, and the trial and acquittal of the appellant upon that charge, but denied that she did same maliciously or without probable cause, and affirmatively pleaded and set forth facts showing that she did have a probable cause for causing the arrest of the appellant upon that charge. The appellant, by reply, traversed the affirmative allegations in the answer, and upon these issues the case went to trial.

After appellant had testified and had introduced her other evidence in chief, the appellee moved the court to instruct the jury peremptorily to find a verdict for her. After consideration the court sustained this motion, and directed the jury to find a verdict for appellee, which was

done. The appellant filed grounds and made a motion to set aside the verdict, and to grant her a new trial, which motion being overruled, she has appealed to this court.

Evidence offered in the case shows the facts to be that the appellant and appellee resided in the same house, and engaged in a quarrel on account of appellee lowering her slops from an upstairs window to the ground, passing the window in a room occupied by the appellant on the lower floor of the building. The appellant, in her testimony, stated that the appellee abused her very considerably, and that she made the following statement to appellee:

"Look here, be careful the names you are calling; don't think everybody is like yourself, because you bring Judge Shoborg down here, and his family * * * I told her because Judge Shoborg came down there, I said—You got by with old man McDonald's money so easy the way you did, you can't call everybody names and get by with it so easy." On cross-examination she was asked the following questions and gave the following answers:

"Q. I understood you to say that on the 15th day of July you did say to Mrs. Scully that she had taken old man McDonald's money and gotten by with it—is that the language you used to her? A. Yes, sir. Q. You said she was having Shoborg come there to her house, and she had gotten by with that? A. Yes, sir."

The use of this language by the appellant to the appellee in the presence of appellee and some others present, in the opinion of the court below, conclusively shows probable cause for the appellee to have appellant arrested and tried upon the charge. In this opinion of the trial judge we concur. Evidently this language by the appellant was used by her with the purpose of charging the appellee with some improper conduct, if not with something very disreputable, and we do not think that any reasonable mind could give it any other meaning. The meaning of the expression "to get by" and what it conveys is well understood. It means that the person referred to has done some act and has escaped the injurious and detrimental consequences which usually attend such an act. It does not seem that Judge Shoborg's name had been mentioned in the quarrel or that he had any connection with the matter in hand, and the

appellant's statement that the appellee had brought Shoborg to her house and "gotten by" with it can have but one meaning, which is very evident, because there could be no injurious consequences to get by with if the transaction was proper. This expression, "to get by" with is never applied except to actions which necessarily have an injurious and detrimental consequence. The charge that appellee had gotten old man McDonald's money and "gotten by" with that so easy could have no meaning, to any reasonable mind, unless it meant that appellee had obtained McDonald's money by some improper and disreputable means. It would be improbable, under the circumstances under which the language was used, to attach any other meaning to these remarks by appellant, except that they were insulting and were used by the appellant to the appellee for the purpose of insulting her and to provoke an assault from her.

The want of probable cause for setting on foot a criminal prosecution is as fatal to the suit of plaintiff in a suit of this character as it is to fail to charge that the prosecution was instituted by the party doing it from malicious motives. What is necessary to allege is also necessary to prove. In Garrard v. Willett (4 J. J. M., 628) this court said: "But, as the plaintiff must prove malice, proof of the want of probable cause devolves on him;" and, in the same opinion, further held "that an allegation of probable cause in the petition was indispensable, and the acquittal of the accused would not prove a want of probable cause conclusively."

In Volume 26, page 86, of the Cyclopedia of Law and Procedure, it is said: "The burden of proving the concurrence of malice and want of probable cause is on the plaintiff;" and on page 83 of same work it is said: "The burden of proof in the first instance, according to the general rule, rests upon the plaintiff, when the general issue is tendered, to prove every essential element of this spcific tort, in order that he may make out a prima facie case. * * * If he fails to sustain the burden of proof, the defendant ordinarily has no occasion to offer evidence in his own defense."

While in some jurisdictions the burden of proving the want of probable cause is put upon the defendant, but in this State and the general rule prevailing everywhere is, that the burden is upon the plaintiff to prove

the want of probable cause for a prosecution against him, as well as to prove malice or facts from which malice may be inferred.  If the evidence offered by the plaintiff himself shows conclusively that the defendant, in a suit of this kind, was not without probable cause to institute and carry on the prosecution complained of, then the plaintiff's case must necessarily fail upon his own evidence, and there is nothing to be submitted to the jury.

In Lancaster v. Langston (18 R., 299) this court held that what facts and circumstances amount to probable cause is a question of law for the court, and whether the facts and circumstances put in evidence exist or not, in any particular case, is a question of fact for the jury.  If the facts insisted upon as showing the existence of probable cause for instituting a criminal or penal prosecution are denied an issue is made in the evidence as to whether or not said facts exist, it would then be the duty of a trial court to submit the question as to whether or not said facts do exist to the jury under proper instructions.  But where the facts are undisputed, and, as in this case, are admitted by the appellant herself, there can be nothing to submit to a jury upon the question of probable cause, but it becomes a matter exclusively for a decision of the court.  This court, in the case of Farris v. Starks (3 B. M., 4), defined probable cause as being such grounds as would induce a man of ordinary prudence and discretion to believe in the guilt and expect the conviction of the person suspected, and if he acts in good faith on such belief and expectation.  In the case at bar the language which appellant admits that she used to the appellee was such that we do not think that any prudent person could fail to have a belief in the guilt of the appellant upon the charge upon which she was prosecuted, and to reasonably expect her conviction upon that charge.  It being, then, the duty of the court to determine as to whether or not the language conclusively shows probable cause for the appellee to act upon in instituting the prosecution against appellant in the justice's court, and the trial court being of the opinion that the language was sufficient to justify a reasonably prudent and cautious person in believing in the guilt of the appellant and expectation of her conviction upon that charge, there was then no cause of action left for the appellant against

the appellee, and the action of the court in directing a verdict for the appellee was proper.

The contention of appellant that the language used by the appellee to her was of an insulting nature and justified her in using the language which she admits that she used, we do not think is founded in any good reason. One person cannot escape the consequences of the violation of the offense denounced in Section 1271 of the Kentucky Statutes, by showing that the person to whom insulting language was used was at the same time guilty of a violation of said statute also.

The judgment appealed from is, therefore, affirmed.