DIXON, JUDGE:
This Court granted Appellants', Chasity Hornsby, M.H., B.H., and H.H. (collectively "Hornsby"), motion for discretionary review of an order of the Grant Circuit Court affirming the Grant District Court's order of eviction. For the reasons set forth herein, we reverse the trial court and remand this matter for further proceedings.
On December 28, 2016, Appellee, the Dry Ridge Housing Authority, filed a forcible detainer complaint against Hornsby in the Grant District Court. The complaint made a number of allegations that Hornsby had breached her lease agreement. The complaint was prepared and signed by Dione Kinman, Executive Director of the Housing Authority.
On January 10, 2017, the district court held a forcible detainer hearing. Both Hornsby and Kinman appeared. At the beginning of the hearing, Hornsby requested that the action be dismissed because Kinman, who is not an attorney, was appearing for the Housing Authority.[1] Kinman responded, "we're a housing authority, we're allowed."[2] The district court denied Hornsby's request and the hearing proceeded. Kinman then testified and provided documentary evidence regarding the allegations in the complaint. In addition, two other housing authority employees testified, both corroborating the allegations contained in the complaint. At the close of the hearing, the district court found that Hornsby had violated the lease *589 in multiple respects and entered a judgment granting the eviction.
On January 17, 2017, Hornsby filed a notice of appeal in the Grant Circuit Court. Hornsby thereafter filed a statement of appeal arguing that the district court's judgment should be vacated because Kinman engaged in the unauthorized practice of law by filing the forcible detainer complaint and representing the Housing Authority in her role as Executive Director despite not having a law license. The Housing Authority, through counsel, filed a counterstatement. On March 27, 2017, the circuit court entered an order affirming the district court. Therein, the circuit court found that " KRS 80.050 specifically vests the power to 'sue and be sued' to the ... housing authority. Therefore, Dione Kinman was not engaged in the unauthorized practice of law." The circuit court also affirmed the district court on other grounds not challenged herein. Hornsby then filed a motion for discretionary review in this Court, which was granted by order entered September 25, 2017.
We note that during pendency of the appellate process, Hornsby vacated the premises. Arguably, the issue presented herein could be regarded as moot and, in fact, the Housing Authority filed a motion in this Court to dismiss on such grounds. Nonetheless, we are persuaded by the language of our Supreme Court's recent opinion in Shinkle v. Turner ,
As we noted in Morgan v. Getter , "The general rule is ... that 'where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed.' " 441 S.W.3d 94, 99 (Ky. 2014) (citations omitted). As methodically explained in Morgan , we recognize and may apply a "public interest" exception to that general rule when the following three elements are present: (1) a question of law that is of a public nature; (2) a need for an authoritative determination for the future guidance of public officers; and (3) a likelihood of future recurrence of the question. Id. at 102.
All three of those are elements present in this matter. First, the proper and efficient application of the law pertaining to the special statutory proceeding for forcible entry and detainer is a matter of public interest.... Second, the statutory process for the adjudication of forcible entry and detainer cases is difficult to apply in the modem court system. The dearth of reported appellate opinions addressing those difficulties leaves our district courts to improvise on their own with little guidance from the appellate courts, leading to inconsistent application of the same statutory standards. Third, the factual situation presented by this case is a recurrent event in modern life that very often arises under circumstances in which appellate review is highly unlikely. Consequently, we are satisfied that all three elements of the "public interest" exception to the mootness doctrine are present here, and our duty lies in resolving the issue for the benefit of those whose lives and property are affected by it.
496 S.W.3d 418, 420-21 (Ky. 2016).
Shinkle concerned the general statutory scheme governing forcible detainer actions set forth in KRS 383.200 -.285. However, we believe that the issue of whether a housing authority's executive director can act as the legal representative in a forcible detainer action also satisfies the elements of the "public interest" exception to the mootness doctrine and thus, "our duty lies in resolving the issue for the benefit of those whose lives and property are affected by it." Id. at 421.
*590 Hornsby argues in this Court that Kinman's filing of the forcible detainer complaint and appearance in the district court on behalf of the Housing Authority constituted the unauthorized practice of law. Hornsby contends that, contrary to the circuit court's determination, simply because a housing authority has the power "to sue and be sued" does not mean that a non-attorney can represent that housing authority in a legal capacity. We agree.
Kentucky Supreme Court Rule 3.020 provides as follows:
The practice of law is any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services. But nothing herein shall prevent any natural person not holding himself out as a practicing attorney from drawing any instrument to which he is a party without consideration unto himself therefor. An appearance in the small claims division of the district court by a person who is an officer of or who is regularly employed in a managerial capacity by a corporation or partnership which is a party to the litigation in which the appearance is made shall not be considered as unauthorized practice of law.
Regarding the unauthorized practice of law, Kentucky's highest Court in Frazee v. Citizens Fidelity Bank & Trust Co. , noted,
The basic consideration in suits involving unauthorized practice of law is the public interest. Public interest dictates that the judiciary protect the public from the incompetent, the untrained, and the unscrupulous in the practice of law. Only persons who meet the educational and character requirements of this Court and who, by virtue of admission to the Bar, are officers of the Court and subject to discipline thereby, may practice law. The sole exception is the person acting in his own behalf.
393 S.W.2d 778, 782 (Ky. 1965).
Our Supreme Court has also observed that "[t]he rules governing the practice of law in this Commonwealth clearly provide that pleadings, motions, and other papers, including motions for discretionary review, are to be signed by the party or his attorney of record." Brey v. Commonwealth , 917 S.W.2d 558 (Ky. 1996) (emphasis in original).
Over twenty years ago, the Kentucky Bar Association issued an Unauthorized Practice of Law Opinion, KBA U-38 (May 1983), which was formally adopted as an advisory opinion under SCR 3.530, wherein the question proffered was: "May the manager of rental real estate, who is not [a] lawyer and does not own the real estate, prepare and file a writ of forcible detainer without engaging in the unauthorized practice of law?" In answering the question in the negative, the KBA stated,
Since the manager of rental property is better situated to know when eviction is appropriate than any other person, and eviction involves his business expertise, some flexibility should be accorded in defining "unauthorized practice" as it relates to him.
But the application to the District Court for writ of forcible detainer constitutes the institution of a "civil action" and regardless of the form used or the name otherwise given it, that application constitutes a complaint. CR 1 & 2. KRS 383.210. It is a pleading.
It is virtually axiomatic that pleadings may be filed only by attorneys or by individual acting pro se....
A manager of rental property has no protectable estate in it, but is clearly acting for another - the owner.
*591 KRS 385.585. The conclusion is inescapable that unless the established rule is contorted beyond recognition, the filing of a writ of forcible detainer is beyond the province of the real estate manager.
Subsequently, in 2008, a panel of this Court in the unpublished decision in Bobbett v. Russellville Mobile Park, LLC , 2007-CA-000684-DG, 2008 WL 4182001 (Ky. App. Sept. 12, 2008) relied upon the Bar Association's advisory opinion in concluding that the manager of a limited liability company, owned solely by the manager and his wife, engaged in the unauthorized practice of law when he signed and filed a forcible detainer complaint.[3] This Court noted, "Mr. Rockaway was not 'acting in his own behalf,' when he filed the forcible detainer complaint against the Bobbetts, so he does not qualify for the exception to the rule that only members of the Bar may practice law." Id. at *2 (quoting Frazee , 393 S.W.2d at 782 ).
The Housing Authority herein contends that KBA U-38 and Bobbett are inapplicable because Kinman is not merely a property manager. Rather, the execution of the Housing Authority's powers and duties, as set forth in KRS 80.180[4] , is delegated to Kinman as the Executive Director, vesting in her authority that far exceeds that enjoyed by a property manager. The Housing Authority further cites to its own bylaws[5] which provide that the Executive Director, who is also designated as the secretary-treasurer of the Housing Authority, has "general supervision over the administration of its business and affairs" and is authorized to perform functions not typically associated with a property manager. With respect to its own characterization, the Housing Authority argues that it is not an LLC or incorporated entity and, as such, is not bound by the rules that *592 control either. Instead, the Housing Authority takes the position that pursuant to KRS Chapter 80, it is a distinct entity with its own set of rights, obligations, limitations and powers.
KRS Chapter 80 governs low-cost housing, including municipal housing authorities. KRS 80.020(1) states in pertinent part,
Cities of all classes may acquire, establish, and operate, within their limits, housing, ... for the purpose of providing adequate and sanitary living quarters for individuals or families, such housing to be for individuals or families with low or moderate income or for individuals or families having income in excess of low or moderate.... They may create city housing authorities, and they and the authorities created by them shall have all powers necessary and appropriate to engage in such housing and slum clearance projects, including, without limitation, all power specified in KRS 80.500 and the power in connection with the use of federal funds, with the approval of the federal funding agency, if applicable, to mortgage, encumber, pledge, assign, or otherwise grant or consent to a lien or security interest in, any real or personal property, or any interest therein, owned or held by the authority....
KRS 80.030(1) further states that "[e]xcept as provided in subsection (2) of this section, a city housing authority shall consist of the mayor, ex officio, or his designee, and four (4) persons appointed by him with the approval of the city legislative body." Finally, KRS 80.050 sets forth that,
[t]he persons appointed as provided in KRS 80.030 and 80.040 shall constitute a body corporate in the name of Housing Authority of...., with power to contract and be contracted with, to sue or be sued, and to adopt a seal and alter it at will. Each authority may establish bylaws, rules and regulations for its own government. Each authority shall elect a chairman and a vice chairman from its members and a secretary and treasurer who need not be a member of the authority. The duties of the offices of secretary and treasurer may be performed by the same person.
While it is clear that the Housing Authority as a "body corporate" has the power "to sue or be sued," we find nothing in the statutory language to support its contention that Kinman has such power in her capacity as Executive Director. There are a multitude of statutes that permit a legal entity "to sue and be sued." See, e.g. , KRS 96A.020 (transit authority); KRS 76.010 (sewer district); KRS 160.160 (board of education). Yet none of these statutes permit a member of that entity to file a complaint or pleading, or otherwise represent the entity in a legal proceeding. Indeed, we believe that to allow such would change the landscape of the practice of law as set forth in SCR 3.020 and eviscerate any prohibition against the unauthorized practice of law.
Kentucky courts have long held that a non-attorney officer of a corporation or limited liability company may not itself engage in the practice of law. Kentucky Bar Association v. Tussey , 476 S.W.2d 177, 180 (Ky. 1972) ("That a corporation may not draw legal instruments through a nonprofessional officer or employee is no more phenomenal than its inability to be so represented in court."); Flynn v. Songer , 399 S.W.2d 491, 494 (Ky. 1966) ("A corporation cannot practice law and must have a licensed attorney representing it in court matters.") (internal quotation marks and citation omitted); see also Kentucky State Bar Ass'n v. First Federal Sav. and Loan Ass'n of Covington , 342 S.W.2d 397 (Ky. 1960). We perceive no real distinction *593 with respect to a housing authority. As noted by the Illinois appellate court, "Municipal corporations, like their business counterparts, are soulless and inanimate, and when an agent undertakes to practice law on behalf of such a principal, he must be licensed to do so." Housing Authority of Cook Cty. v. Tonsul , 115 Ill.App.3d 739, 71 Ill.Dec. 369, 450 N.E.2d 1248, 1251 (1983).[6]
Under our Constitution, the Kentucky Supreme Court has exclusive authority to define the practice of law, and to determine who may engage in such practice. KY. CONST. § 116. Any suggestion by the Housing Authority that KRS Chapter 80 somehow bestows upon Kinman, as the Executive Director, the authority to practice law without a license is untenable and without merit. Certainly, if we were to construe the statutory provisions in the manner in which the Housing Authority posits, they would necessarily be deemed unconstitutional. Turner v. Kentucky Bar Association , 980 S.W.2d 560, 563 (Ky. 1998) ("Undoubtedly, the separation of powers principles strictly prohibit the legislature from infringing upon the judiciary's exclusive power to make rules governing the practice of law, court procedures, and any exceptions thereto."); see also Commonwealth v. Schumacher , 566 S.W.2d 762, 764 (Ky. App. 1978) ("when the legislature ... attempts to establish rules of appellate procedure, it is contrary to the dictates of the Constitution.")
It is well-known in Kentucky that some housing authorities authorize their executive directors to file and proceed with forcible detainer actions on behalf of the housing authority in the absence of a licensed attorney. Trial courts, however, are not at liberty to circumvent or evade the rules and statutory provisions by turning a blind eye to the requirements for the sake of expedience. There can be no question that Kinman, in filing the forcible detainer complaint and appearing at the hearing, was not acting on her own behalf, but rather in the interest of the Housing Authority. As such, we can reach no other conclusion than that she was engaging in the unauthorized practice of law. As the Shinkle Court observed, "we cannot sanction procedural improvisations such as the one employed here" regardless of whether it is a common and accepted practice. 496 S.W.3d at 423. Our rules dictate what is and is not the unauthorized practice of law and we are required to follow them. A forcible detainer complaint is a pleading that must be filed and practiced by an attorney. As that was not done in this case, it must be dismissed.
For the reasons set forth herein, the judgment of the Grant Circuit Court is reversed, and this matter is remanded for entry of an ordering dismissing the forcible detainer complaint against Hornsby.
ALL CONCUR.

The Housing Authority is adamant that it was not represented at the hearing and that Kinman was merely present on its behalf. We believe that the video belies such notion as Kinman explicitly stated at the beginning of the hearing, "I have two witnesses."

Interestingly, at no point during the hearing did the district court inquire of Kinman as to who she was or in what capacity she was appearing for the Housing Authority.

The appellant in Bobbett argued that because he was the sole owner of the LLC, they were essentially one in the same for purposes of filing the forcible detainer action. Were the tables turned, however, we feel confident that a sole owner of an LLC would surely seek to avoid liability based upon the legal distinction between the two.

KRS 80.180 provides:
(1) The authority shall, itself, or through agreements with other public or private entities, operate, manage, and control housing, fix the rate of rentals, and establish bylaws, rules, and regulations for the use and operation of the projects not inconsistent with the provisions of this chapter. The legislative body of a city may prescribe by ordinance penalties for the violation of bylaws, rules, and regulations of a project located within the city.
(2) The authority, itself, or through agreements with other public or private entities, may operate, manage and control housing stock not within the meaning of KRS 80.010(1) either in their entirety or in conjunction with other persons, whether private or public, or whether through partnership agreements, joint venture agreements and development agreements, limited liability company agreements, and other agreements of that type with other persons, public or private, who may earn a profit from the activities of that venture. Although public housing projects shall not be constructed or operated for profit, or as a source of revenue, other activities undertaken by an authority in conformance with this chapter to maintain or enhance the adequacy of housing stock for low-income and moderate-income persons shall not be subject to the limitation on construction or operation for profit, so long as any profits or any other net revenues generated thereby are utilized, directly or indirectly, in the furtherance of the maintenance and enhancement of housing.

Hornsby points out that the circuit court erroneously cited to the Housing Authority's bylaws because they were not introduced in the district court.

In Downtown Disposal Services, Inc. v. City of Chicago, 365 Ill.Dec. 684, 979 N.E.2d 50 (2012), the Court declined to follow Tonsul's holding that the filing rendered the proceedings null and void.