RENDERED: JANUARY 7, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2017-CA-1156-MR

MICHAEL NICHOLS                                                      APPELLANT

ON REMAND FROM KENTUCKY SUPREME COURT
FILE NO. 2019-SC-0477-DG

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA J. ECKERLE, JUDGE
v.                                    ACTION NO. 16-CI-02236

KENTUCKY UNEMPLOYMENT
INSURANCE COMMISSION
AND NORTON HEALTHCARE, INC.                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

MAZE, JUDGE: This case is before us on remand from the Supreme Court of

Kentucky following reversal of our prior opinion in *Kentucky Unemployment*

*Insurance Commission v. Nichols*, No. 2019-SC-0477-DG, 2021 WL 5050254

(Ky. Oct. 28, 2021). The Kentucky Supreme Court remanded this matter for further consideration of the issues not addressed in this Court's prior opinion. Michael Nichols appeals a decision by the Jefferson Circuit Court which affirmed the ruling of the Kentucky Unemployment Insurance Commission ("the Commission") denying his application for benefits.

There are two arguments remaining on appeal. First, Nichols contends that his former employer, Norton Healthcare, Inc. ("Norton"), failed to offer sufficient evidence that he was fired for misconduct, and the Commission wrongfully placed the burden on him to show his lack of misconduct. And second, Nichols argues that the Commission erred in finding that he knowingly made false statements on his unemployment application. We conclude that the Commission applied the correct standard of proof for determining misconduct. We further find substantial evidence to support the Commission's findings that Nichols was fired for misconduct and that he knowingly made false statements on his application. Hence, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Nichols worked for Norton as a clinical engineering specialist from April 14, 2013, until November 9, 2015. His duties included inspection, maintenance, and repair work, on all biomedical and sterilization equipment in Norton's six Louisville-area facilities. The clinical engineering team consisted of

only two people, Nichols and his team leader, Kara Fautz. Both workers had regular duty hours and after-hours, on-call responsibilities.

Due to the small team size and heavy workload, Fautz and Nichols often relied on outsourced repair and maintenance work performed by vendors. Both Fautz and Nichols were aware, however, that Norton wanted to phase out this reliance on expensive outside vendor services and rely solely on the in-house equipment maintenance staff.

Growing dissatisfied with the effect his on-call responsibilities had on his personal life, Nichols emailed his supervisor, Norton's Systems Director of Clinical Engineering, Scott Skinner, in September of 2015. He inquired about the possibility of handing his on-call duties over to Getinge USA, Inc. ("Getinge"), one of the outside vendors frequently retained by Norton to handle maintenance and repair tasks the in-house team could not perform. Skinner denied the request, citing budgetary concerns.

In October of 2015, Fautz was assigned to work on an off-site special project which would demand her exclusive attention for the next three weeks. Before she left, Fautz instructed Nichols to perform the annual preventive maintenance on all of Norton's sterilizer equipment by the end of the month, going so far as to tell him to ignore the "trouble calls" that came in while he performed that work. Nichols acknowledged in his later hearing testimony that failure to

perform this maintenance would "put us out of compliance" with regulatory requirements that mandated more thorough maintenance than usual, and such work needed to be completed by the end of October. Skinner told Nichols that Norton deemed it prohibitively expensive to employ outside vendors to perform this work.

Fautz's instructions notwithstanding, Nichols, out of an alleged concern for patient care, intentionally prioritized the "trouble calls" over the sterilizer maintenance. He worked on the sterilizers only when he had the time, and employment records did not indicate Nichols worked any overtime hours during October 2015. Later in the month, it grew apparent that Nichols could not complete the sterilizer maintenance. Nichols instead performed a less thorough quarterly maintenance routine on some of the sterilizers and retained Getinge to perform the work on the rest. Nichols also closed out the work orders on those machines as soon as Getinge began work on them, rather than waiting until after the work had been completed. Fautz learned, on November 2, 2015, that Nichols had not only disobeyed her direction to ignore the trouble calls, but also failed to complete the annual preventative maintenance on the sterilizers and retained Getinge to perform the work she had specifically assigned to him. She notified Skinner of Nichols' actions.

Skinner confronted Nichols about his suspected misfeasance on November 6, 2015. Skinner suspended Nichols pending a final disciplinary

-4-

decision by Norton. On November 9, 2015, Skinner called Nichols and informed him that Norton had decided to terminate his employment. Fifteen minutes later, Nichols submitted an online application for unemployment benefits,[1] seeking to secure unemployment benefits as expeditiously as possible.

The application requests information regarding the reason for the applicant's separation. In one instance, the applicant is asked to select from a list of options which include "discharge" and "lack of work." Nichols selected "lack of work," and now argues that he misunderstood the term to mean that he was fired for failing to perform work tasks, rather than the actual meaning of the term, that the employer had no work for the employee to perform. The application also had an area where applicants could elaborate on their selected answer; Nichols noted that he was "Let go due to lack of work. I have not been given a reason for being let go." Soon after, Nichols received a written Corrective Action Record from Norton which listed the reasons for his firing: abandonment of duties, falsification of records, and inappropriate stewardship of company resources.

The Commission's Unemployment Division conducted follow-up inquiries with Nichols and Norton. After this investigation, the Unemployment Division determined that Norton had fired Nichols for misconduct and that he had

---

[1] Nichols later claimed his wife completed the application for him, though who actually completed the form is immaterial for our review.

made intentional misrepresentations in his application, which justified both his disqualification from eligibility to receive benefits and the extension of this period of ineligibility. Nichols then appealed this decision to a referee.

The referee conducted evidentiary hearings on February 8 and 29, 2016. Nichols was represented by counsel, while Skinner, a non-lawyer, appeared for Norton. Skinner also testified in the hearings, offering several crucial facts. Skinner testified that Nichols had accepted blame and admitted wrongdoing during their November 6 conversation. Nichols admitted to having closed the work orders prior to the completion of the work. On that topic, Skinner testified that company policy mandated completing work before closing out a work order. He also offered that Norton's human resources office considered Nichols' actions in October 2015 to have been reckless. Skinner admitted that Norton had used Getinge for similar work in the past, and that Nichols had authorized their work without reprimand.

The referee conducted the vast majority of questioning during Nichols' testimony at the February 29 hearing. However, the referee also afforded Skinner an opportunity to conduct a brief cross-examination, asking several questions of Nichols. Nichols testified that he had never been reprimanded for retaining Getinge in the past, but also conceded that Skinner had told him not to hire a vendor in late September. Nichols also testified that he had not intentionally

included misleading information in his application. He explained that he thought "lack of work" meant he was fired for not personally completing his assigned work.

The referee affirmed the Unemployment Division, entering a written ruling to that effect on March 18, 2016. The Commission, after conducting a *de novo* review of the record, affirmed. The Commission concluded that Nichols had been terminated for misconduct, specifically: abandoning his work duties, dishonesty, and inappropriate stewardship of company resources. Supporting the conclusion, the Commission offered the following factual findings: Nichols had failed to obey reasonable instructions to complete the annual preventive maintenance without resorting to the use of a third-party vendor, he had closed out work orders indicating completion of work he knew had not been completed, and that he had no need to seek third-party assistance if he had made diligent efforts to complete the assigned task.

Nichols filed a petition for judicial review in Jefferson Circuit Court, alleging three errors by the Commission. He first contended that the Commission's factual findings lacked the support of substantial evidence. Second, he contended that the Commission impermissibly shifted the burden to him to prove the lack of misconduct. Finally, he contended that the evidentiary hearings before the referee were unconstitutional *per se* due to Skinner's appearance as a

non-attorney representative on behalf of Norton.  The circuit court affirmed the Commission in all respects.

On appeal, this Court reversed on the latter issue.  This Court determined that KRS[2] 341.470(3)(a) was unconstitutional because it authorizes a non-attorney to represent a corporate or partnership employer in a proceeding before the referee or the Commission.  We concluded that the statute encroached on the exclusive power of the judiciary to establish rules relating to the practice of law.  *See* Ky. Const. § 116.  *See also Turner v. Kentucky Bar Ass'n*, 980 S.W.2d 560, 562-63 (Ky. 1998).  Consequently, this Court reversed the circuit court's decision affirming Commission's ruling and remanded for a new administrative hearing before the Commission or a referee at which Norton was to be represented by an attorney.  *Nichols v. Kentucky Unemployment Ins. Comm'n*, No. 2017-CA-001156-MR, 2019 WL 1868589 (Ky. App. Apr. 26, 2019).

On discretionary review, the Kentucky Supreme Court reversed this Court's decision.  The Supreme Court held that Nichols lacked standing to challenge the constitutionality of KRS 341.470(3)(a) because he failed to allege a sufficient injury attributable to Norton's representation by a non-attorney.  *Nichols*,

---

[2] Kentucky Revised Statutes.

2021 WL 5050254, at *4.[3]  The Supreme Court remanded this matter for review of

Nichols' remaining claims.

## II.  ANALYSIS

## A.  STANDARD OF REVIEW

Judicial review of an administrative action by the Commission

involves an examination of the factual findings to determine if substantial evidence

supports them, and then determining whether the agency correctly applied the

governing law to the facts.  *Thompson v. Ky. Unemployment Ins. Comm'n*, 85

S.W.3d 621 (Ky. App. 2002).  If the record contains substantial evidence, a

reviewing court must defer to the agency's findings, even where evidence exists to

the contrary.  *Id.* at 624.  Courts have defined the term, "substantial evidence," as

---

[3] In dicta, the Supreme Court also suggested that Skinner's representation of Norton before the referee would not amount to the unauthorized practice of law because he was not offering legal advice.  *Nichols*, 2021 WL 5050254, at *5.  However, the Supreme Court has previously emphasized that conduct implicates the practice of law if "(1) it requires legal knowledge or legal advice, (2) *involves representation, counsel or advocacy on behalf of another party*, and (3) involves the rights, duties, obligations, liabilities, or business relations of that other party." *Countrywide Home Loans, Inc. v. Kentucky Bar Ass'n*, 113 S.W.3d 105, 121 (Ky. 2003) (emphasis added).  Furthermore, it is well-established that representation of a corporate or non-natural entity by a non-attorney implicates the unauthorized practice of law.  *See* Rule of the Supreme Court (SCR) 3.020.  *See also Kentucky Bar Ass'n v. Tussey*, 476 S.W.2d 177, 180 (Ky. 1972) ("That a corporation may not draw legal instruments through a nonprofessional officer or employee is no more phenomenal than its inability to be so represented in court."); *Flynn v. Songer*, 399 S.W.2d 491, 494 (Ky. 1966) ("A corporation cannot practice law and must have a licensed [attorney] representing it in court matters.") (citation omitted); *and Kentucky State Bar Ass'n v. First Federal Sav. and Loan Ass'n of Covington*, 342 S.W.2d 397 (Ky. 1960). Consequently, we respectfully suggest that the Supreme Court's dicta in *Nichols* may be misleading.

"evidence which has sufficient probative value to induce conviction in the minds of reasonable people." *Ky. Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238, 245 (Ky. 2012) (citing *Ky. State Racing Comm'n v. Fuller*, 481 S.W.2d 298 (Ky. 1972)). "If the reviewing court concludes the rule of law was correctly applied to facts supported by substantial evidence, the final order of the agency must be affirmed." *Id.* at 246 (citing *Brown Hotel Co. v. Edwards*, 365 S.W.2d 299 (Ky. 1962)).

## B. THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE COMMISION'S FINDINGS AS TO THE ALLEGED MISCONDUCT

In situations where the employer fired the employee for misconduct, the employee, because of that misconduct, cannot receive unemployment benefits. "A worker shall be disqualified from receiving benefits for the duration of any period of unemployment with respect to which . . . [h]e has been discharged for misconduct or dishonesty connected with his most recent work[.]" KRS 341.370(1)(b). The statutory definition of misconduct includes refusal to obey reasonable instructions and knowingly violating reasonable and uniformly enforced rules of an employer. KRS 341.370(6).

It is well-established that the employer seeking to defeat a claim for benefits bears the burden of proving it fired the employee for misconduct. *Brown Hotel*, 365 S.W.2d at 301. Nichols argues the referee and the Commission

improperly required him to prove lack of misconduct. He further argues that Norton failed to offer sufficient evidence to defeat his claim for benefits.

Specifically, Nichols asserts that he could not have been fired for misconduct, because "misconduct" implies intent, and he could not have intended to violate an order of which he had no knowledge. He relies heavily on *Smith v. Kentucky Unemployment Insurance Commission*, 906 S.W.2d 362 (Ky. App. 1995), to support his contention that failing to abide by a policy that Norton had not published in advance of his alleged violation could not constitute misconduct. However, *Smith* does not fully support his position.

In *Smith*, the employer required the two employees to submit to a drug test following an altercation at work. The employer's drug-testing policy required the employees to identify all drugs used in the two weeks prior to the test. The tests were positive for the presence of marijuana, which the employees had not disclosed. Based on the positive tests, the employer discharged the employees for violation of its drug-testing policy. *Id.* at 363.

In their claim for unemployment benefits, the employees in *Smith*, like Nichols, argued that "misconduct" could not be based on a violation of work rules which were not distributed or posted by the employer. The employees also argued that their admission to off-duty use of illegal drugs could not meet the statutory definition of misconduct. While the Commission agreed with these positions in

-11-

principle, the Commission also found that the employees were aware of the employer's drug policies at the time they took the test.

> In this case, the employer did make claimant aware of its intent to have a drug-free workplace, did have a reasonable basis to send claimant for drug testing as a result of a verbal altercation on its premises and allegations that claimant had used drugs on its property, and did have a right to expect claimant to answer questions truthfully about drug usage once claimant agreed to be tested for drug use.

*Id.*

This Court found substantial evidence to support the Commission's finding that the employees were aware of the employer's policy and expectations. Consequently, the Court held that the circuit court properly affirmed the Commission's finding that the claimants committed misconduct by violating the employer's drug testing policy. *Id.*

Since *Smith*, the Kentucky Supreme Court has held that the definition of "misconduct" in KRS 341.370(6) does not require a showing of bad faith or willful or wanton conduct. *Cecil*, 381 S.W.3d at 247. But as previously noted, the applicable definition of misconduct includes *knowingly* violating reasonable and uniformly enforced rules of an employer. KRS 341.370(6). As a result, the statute clearly requires the employer to prove the employee's knowledge of the rules and intent to violate those rules.

But in this case, the record amply supports the Commission's finding that Nichols knowingly violated Norton's instructions. At the hearing, Skinner testified that Nichols violated company policy by closing out the work orders on the sterilizers before having completed the work. Skinner also testified that Nichols had been trained on Norton's standard operating procedures regarding when to close out a work order. Nichols did not controvert this assertion in his own testimony.

Moreover, Nichols was fired for his refusal to abide by reasonable instructions of his superiors. Nichols testified that Fautz had told him to perform preventative annual maintenance on the sterilizers and to ignore "trouble calls" for other equipment until that work had been completed. Nichols further testified that he deliberately continued to respond to the trouble calls, and that he intentionally performed the less thorough quarterly preventative maintenance of the sterilizers. He also acknowledged that his failure to perform the more thorough maintenance put Norton out of compliance with applicable regulations. In addition, Nichols acknowledged that he had closed out work orders indicating completion of work which had not been completed.

The record established here that Norton considered hiring an outside vendor to perform maintenance services to be prohibitively expensive. Nichols conceded knowledge of that fact at several points in his hearing testimony.

Nichols also acknowledged that he alone made the decision to hire Getinge to perform the annual maintenance duties he could not perform on time. Skinner testified that Norton had no reasonable basis to believe Nichols could not get his work done. Given that his actions directly contravene Norton's pecuniary interests, coupled with his knowledge of that fact, the agency committed no error in deeming Norton's reaction to such behavior as a firing for misconduct, nor did the circuit court in affirming that conclusion.

Nichols contends that he violated Norton's policies and the instructions of his supervisors out of an abundance of concern for Norton's interests. He states that he took these actions because he believed that Norton was not devoting sufficient resources to conduct all of the maintenance which was required of him. However, Nichols was not entitled to violate Norton's policies and instructions merely because he questioned their wisdom. Nichols presented no evidence that his compliance with Norton's instructions would have placed Norton outside of regulatory compliance or placed any other persons at risk of harm. To the contrary, Skinner testified that Nichols' failure to complete the sterilizer maintenance actually placed Norton out of compliance. Likewise, Nichols does not argue that Norton's policies and instructions made it impossible for him to complete all the tasks which were expected of him. Under the circumstances, we

-14-

find substantial evidence to support the Commission's finding that Norton fired Nichols for misconduct.

## C. THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE COMMISSION'S FINDINGS AS TO THE ALLEGED FALSE STATEMENTS IN NICHOLS' APPLICATION

KRS 341.370(2) disqualifies claimants from receiving benefits for knowingly making false statements in order to establish a right to receive benefits. Nichols conceded that his application contained false material statements, though he contends it was not knowingly made. The referee and the Commission both found his assertion, that the misstatement resulted from a misunderstanding of the questions on the application, to strain credibility.

Substantial evidence exists in the record to support the agency's conclusion. Nichols noted that he had applied for unemployment benefits after being laid off from previous employment, so he was not a stranger to the process. He also made more than one statement in his application that he had been separated due to lack of work and had not been given a reason for his separation. Nichols knew he had been fired, however, but his application did not reflect that reality.

The facts at play in this case are similar to those found in *Downey v. Kentucky Unemployment Insurance Commission*, 479 S.W.3d 85 (Ky. App. 2015). The claimant had worked for a nursing home corporation and had been terminated

-15-

for refusing a work assignment that doubled her normal workload.  Her employer contended that such refusal amounted to misconduct and terminated her.  The claimant immediately applied for benefits and characterized her separation as having been "laid off" for "lack of work."  *Id.* at 87.  Her employer refuted those representations in her application, and she was denied benefits based on the fact that she had been fired for misconduct and had made false representations in her application.  The Commission reversed in part, concluding that the job assignment was an unreasonable request and her refusal could not constitute misconduct, but the Commission affirmed the disqualification based on the misrepresentations in her application.  *Id.* at 88.  The circuit court affirmed the Commission's ruling on the basis that substantial evidence supported the finding that the claimant had knowingly made false representations to secure benefits, and this Court affirmed the circuit court.  *Id.* at 90.

In the instant matter, both the referee and the Commission found Nichols' justification for the misstatements in his application lacked credibility.  Because the agency is the fact-finder and sits in the best position to determine such issues, a reviewing court "may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence."  *Thompson v. Ky. Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624

(Ky. App. 2002). Much like the circuit court, we can find no error in the Commission's findings, and we must affirm.

## III.   CONCLUSION

Accordingly, we affirm the judgment of the Jefferson Circuit Court upholding the decision of the Kentucky Unemployment Insurance Commission.

ALL CONCUR.


BRIEF FOR APPELLANT:

Kevin B. Sciantarelli
Robyn Smith
Louisville, Kentucky

BRIEF FOR APPELLEE
KENTUCKY UNEMPLOYMENT
INSURANCE COMPANY:

Clay J. Lamb
Frankfort, Kentucky


BRIEF FOR APPELLEE NORTON
HEALTHCARE, INC.:

Donna King Perry
Louisville, Kentucky